**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| H. LEIGH SHOCRYLAS,                                   ) | |
|                                                                       ) | |
|             **Plaintiff,**                                        ) | |
|                                                                       ) | |
| v.                                                                    )          **Civil Action No.** | |
|                                                                       )          **06-40278-FDS** | |
| WORCESTER STATE COLLEGE,             ) | |
| DAVID CARUSO,                                        ) | |
| WILLIAM WHITE,                                       ) | |
| LINDA LARRIVEE, and                             ) | |
| LEE CORDARO,                                         ) | |
|                                                                       ) | |
|             **Defendants.**                                   ) | |
| _____) | |

**MEMORANDUM AND ORDER ON MOTION TO**
**DISMISS OF DEFENDANT WORCESTER STATE COLLEGE**

**SAYLOR, J.**

    This is a civil action arising from the dismissal of plaintiff Leigh Shocrylas from the

graduate speech language pathology program of defendant Worcester State College ("WSC")  in

January 2006.  WSC is a public institution established under Massachusetts law.  WSC has moved

to dismiss for lack of subject matter jurisdiction on grounds of sovereign immunity.  For the

reasons set forth below, the motion will be granted.

**I.      Factual Background**

    As required in this context, the well-pleaded factual allegations of the amended complaint

are accepted as true and will be construed in the light most favorable to the non-moving party.

*See, e.g.*, *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998).

    Leigh Shocrylas was enrolled in the graduate speech language pathology program at

WSC.  She contends that throughout her enrollment in the program, she suffered "overt hostility

and ill will [by] certain members of the WSC administration."  She completed her course requirements, earning a 3.5 grade point average.  The only remaining requirement for completion of the program was a "clinical practicum."  The practicum required her to participate in direct client counseling sessions that were supervised and graded by WSC staff, including staff members who allegedly demonstrated personal animus toward her.  Shocrylas contends that although she was never informed of any deficiencies in her clinical work, she was given "low marks" and was dismissed from the program.

## II.      Procedural Background

On December 18, 2006, Shocrylas filed a complaint against Worcester State College.  On May 1, 2007, she amended her complaint, adding claims against four individual defendants, David Caruso, William White, Linda Larrivee, and Lee Cordaro.  The amended complaint contends that WSC, along with the individual defendants, denied plaintiff a fair opportunity to earn her degree by unfairly and arbitrarily assigning her unsatisfactory grades on her clinical work and maliciously dismissing her from the program based on impermissible and non-academic motivations. Shocrylas alleges that defendant WSC (1) deprived her of her constitutional rights under color of state law within the meaning of 42 U.S.C § 1983; (2) breached its contract with plaintiff; and (3) breached the covenant of good faith and fair dealing implicit in the parties' contract.  Shocrylas seeks reinstatement in WSC's graduate program in speech language pathology as well as compensatory and punitive damages.

WSC moved to dismiss the complaint for lack of subject matter jurisdiction under Fed. R.

Civ. P. 12(b)(1).[1]  As grounds for dismissal, WSC contends that (1) the Eleventh Amendment

bars plaintiff's claims because WSC has not waived its immunity to suit and its immunity has not

been abrogated, and (2) WSC is not a "person" subject to suit under § 1983.[2]  In support of its

motion to dismiss, WSC submitted an affidavit by Kathleen M. Eichelroth, the college's Chief

Financial Officer and Vice President of Fiscal Affairs, that details WSC's financial and

administrative structure.[3]

III.   **Analysis**

   A.   **Eleventh Amendment Immunity**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. Amend. XI.  As interpreted, the Eleventh Amendment also bars suits brought in

federal court against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).  Thus,

in the absence of consent or abrogation, a federal-court suit in which the state or one of its

agencies or departments is the named defendant is proscribed by the Eleventh Amendment.

---

[1] The claims against WSC are identical in the original complaint and her amended complaint.  The Court will treat WSC's motion as a motion to dismiss the amended complaint.

[2] The immunity issue is properly addressed as an issue of subject matter jurisdiction under Rule 12(b)(1), rather than as an issue of the sufficiency of the complaint under Rule 12(b)(6).  *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."); *Rivera Torres v. Junta de Retiro Para Maestros*, 502 F. Supp. 2d 242, 247 n.3 (D.P.R. 2007).

[3] The Court may consider Eichelroth's affidavit for the purposes of determining subject matter jurisdiction.  *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Dynamic Image Techs., Inc., v. United States*, 221 F.3d 34, 37-38 (1st Cir. 2000).

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Accordingly, if the Court determines that Worcester State College is a state agency, then plaintiff will be barred from pursuing her claims against WSC because there has been neither state consent to the suit nor abrogation of the state's immunity.  *See Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989) (finding § 1983 did not abrogate Eleventh Amendment sovereign immunity).

### 1.    Determining Whether Educational Institutions Are State Agencies

State universities and colleges have been frequently permitted to invoke the state's sovereign immunity as a bar to litigation in federal court.  *See generally* Erwin Chemerinsky, *Federal Jurisdiction* § 7.4 (3d ed. 1999).  The First Circuit has developed a multi-part test for determining whether a state university or college is an arm of the state and thus protected by the state's immunity.  *See University of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200 (1st Cir. 1993) (concluding that the University of Rhode Island is *not* an arm of the state for diversity-of-citizenship purposes).

In *A.W. Chesterton*, the University of Rhode Island ("URI") contended that it was not a citizen of Rhode Island for diversity-of-citizenship purposes because it was an arm or alter ego of the state, and a state cannot be a citizen of itself for purposes of diversity jurisdiction.  2 F.3d at 1202.  The First Circuit ruled that "each state university must be evaluated in light of its unique characteristics," *id.* at 1204, and listed eight non-exhaustive criteria for courts to consider in making the arm-of-the-state determination:

whether the entity (1) performs an "essential" or "traditional" governmental function, as opposed to a nonessential or merely proprietary one; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds not appropriated from the State treasury; (4) possesses the status of a separate "public corporation"; (5) may sue and be sued in its own name; (6) can enter into contracts in its own name; (7) has been granted a state tax exemption on its property; or (8) has been expressly debarred from incurring debts in the State's name or behalf.

*Id.* at 1205 (citing, *inter alia*, *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 991 F.2d 935, 939-40 (1st Cir. 1993)).

Applying those factors, the court concluded that the Rhode Island Board of Higher Education, the legal entity that acts for URI, "unlike more 'typical' state educational entities," was so operationally and financially autonomous that it was not an arm or alter ego of the state and therefore was a Rhode Island citizen. *A.W. Chesterton*, 2 F.3d at 1211. The court noted that the Board enjoyed an "extraordinary measure" of autonomy. *Id.* at 1206. It had pervasive supervisory powers with significant insulation from political pressure. *Id.* at 1208. It had the power to hold, acquire, and dispose of property for URI and to enter into contracts in its own name. *Id.* at 1209. The court also concluded that the Board had significant financial autonomy from the state. *Id.* at 1211. Thus, although it received both appropriated funds and non-appropriated funds (for example, tuition and donations), it had plenary authority to reallocate appropriated funds, and a significant portion of its funds were non-appropriated. *Id.* at 1210.

As noted, *A.W. Chesterton* involved a determination of the "citizenship" of the university for diversity jurisdiction purposes. The court observed, however, that there is "an essential similarity between the [Eleventh Amendment] immunity and diversity tests." *Id.* at 1203 n.4. The ultimate question for decision in both contexts is "whether the [state] remains the *real party in*

*interest*, notwithstanding [the state-related entity's] designation as the nominal [party]." *Id.* at 1203. But in the immunity context, an additional, primary focus of attention is on "any financial *drain* on the State treasury caused by a judgment" adverse to the state-related entity. *Id.* at 1203 n.4.

Since its decision in *A.W. Chesterton*, the First Circuit has refined the analytical framework for determining whether a public entity created by the state is entitled to Eleventh Amendment immunity. In *Fresenius Medical Care Cardiovascular Resources, Inc., v. Puerto Rico and the Caribbean Cardiovascular Center Corp.*, the court set forth a two-pronged test for that analysis. 322 F.3d 56, 68 (1st Cir. 2003). The first prong asks whether the state has clearly structured the entity to "share its sovereignty." *Id.* The factors set forth in *A.W. Chesterton* and *Metcalf & Eddy* are used to perform this analysis. *See id.* If the factors assessed in evaluating the structure of the state-related entity are inconclusive, then the second prong assesses the risk that damages will be paid from the public treasury. *Id.* "This analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness." *Id.*

Accordingly, the Court must examine the state statutory scheme, taken as a whole, to determine whether the Commonwealth has structured WSC to "share its sovereignty." The Court will also consider how the courts of the Commonwealth have addressed that issue, although to date no court appears to have addressed whether Worcester State College is an arm of the state.[4]

---

[4] Some courts, however, have concluded that the University of Massachusetts is an arm of the Commonwealth. *See Orell v. UMass Mem'l Med. Ctr., Inc.*, 203 F. Supp. 2d 52, 60 (D. Mass. 2002) ("[UMass Memorial Medical Center], as a part of the University of Massachusetts, is a public institution established under the laws of the Commonwealth and is, accordingly, an 'arm' of the state entitled to Eleventh Amendment immunity."); *Ali v. University of Mass. Med. Ctr.*, 140 F. Supp. 2d 107, 110 (D. Mass. 2001) (holding that UMMC, as a part of the University of Massachusetts, is an arm of the state and therefore not subject to suit under the MCRA); *Daniel v. American Bd. of Emergency Med.*, 988 F. Supp. 127, 180-81 (W.D.N.Y. 1997) (concluding that the University of Massachusetts Medical Center is entitled to Eleventh Amendment immunity); *see also Neo*

Although the question of whether WSC enjoys Eleventh Amendment immunity is an issue of

federal law, *id.* at 61 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997)),

the resolution of that issue depends almost entirely on the structure and purpose of state law, and

therefore state law judicial interpretations are entitled to considerable weight in that analysis.  *See*

*Redondo Constr. Corp. v. Puerto Rico Highway and Transp. Auth.*, 357 F.3d 124, 128 n.3 (1st

Cir. 2004) (state-court determinations as to the intentions of the legislature are "worthy of

consideration" in performing the federal-law analysis).

### 2.    Worcester State College's Status as a State Agency

Worcester State College is one of nine state colleges in the Massachusetts public higher

education system.  Mass. Gen. Laws ch. 15A, § 5.[5]  WSC is governed according to ch. 15A, § 22:

> [e]ach board of trustees of a community college or state college shall be
> responsible for establishing those policies necessary for the administrative
> management of personnel, staff services and the general business of the institution
> under its authority.

Mass. Gen. Laws ch. 15A, § 22.  Chapter 73 further provides:

> in exercising the authority to grant degrees, the board shall be subject to the
> determinations of the board of higher education delineating functions and
> programs for public institutions of higher education and segments of such
> institutions.

Mass. Gen. Laws ch. 73, § 1.  While WSC's board of trustees is subject to the determinations of

the board of higher education, the trustees do have some degree of autonomy in the management

---

*Gen Screening, Inc., v. New Eng. Newborn Screening Program*, 187 F.3d 24, 27 (1st Cir. 1999) (describing as "at least colorable and certainly not plain error" the court's holding that the University enjoys Eleventh Amendment immunity but not deciding the issue because it was conceded for purposes of appeal); *Cantwell v. University of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977) (affirming dismissal of claims against the University on common-law-sovereign-immunity grounds).

[5] There are also fifteen community colleges and five campuses of the University of Massachusetts in the state's public higher education system.  Mass. Gen. Laws ch. 15A, § 5.

of the college's affairs.  Specifically, Chapter 73 provides:

> [n]otwithstanding any other provision of law to the contrary, except as herein provided, the trustees may adopt, amend or repeal such rules and regulations for the government of any such college, for the management, control and administration of its affairs, for its faculty, students and employees, and for the regulation of their own body, as they deem necessary, and may impose reasonable penalties for the violation of such rules and regulations.

*Id.*  The autonomy of the trustees extends not only to academic affairs, but also to certain financial matters.  *See id.*, § 1A (granting trustees authority to set tuition fees); *id.*, § 12 (providing that trustees may, at their own discretion, transfer funds among subsidiary budget accounts); *id.*, § 15 (giving the trustees some independence in purchasing decisions).

The trustees, however, are by no means free from state supervision and control, beginning with the manner of their appointment.  The governor appoints ten voting members of the board of trustees to serve five-year, uncompensated terms.[6]  Mass. Gen. Laws ch. 15A, § 21.  The governor's appointment power is an important fact that may indicate an entity's lack of independence from state control, although, fixed terms and minimal compensation tend to suggest the opposite.  *See Fresenius*, 322 F.3d at 68; *A.W. Chesterton*, 2 F.3d at 1208.

The college is not financially autonomous.  Operating funds for WSC are appropriated by the Massachusetts legislature.  Mass. Gen. Laws ch. 73, § 12.  The trustees must prepare a budget for the college and submit it to the governor.  *Id.*, § 11.  All WSC accounts under the direction and control of the trustees are audited biennially by the state auditor.  *Id.*, § 10.  The trustees must make monthly statements of the receipts and expenditures of the college to the state comptroller, and they must give a complete financial report covering all receipts and expenditures annually to

---

[6] The final  member of the eleven-member board is a student who is elected to serve a one-year term. Mass. Gen. Laws ch. 15A, § 21.

the governor and the legislature.  *Id.*, § 13.  This monitoring of appropriated and non-appropriated funds alike suggests that WSC lacks complete "meaningful fiscal autonomy" from the state.  *See A.W. Chesterton*, 2 F.3d at 1211.

Other characteristics of WSC also indicate that it is structured to be an arm of the Commonwealth.  The college serves a core governmental function, to provide public higher education.  Mass. Gen. Laws ch. 15A, §§ 1, 22; *see A.W. Chesterton*, 2 F.3d at 1206 ("[I]t may well be that an entity established to conduct a core governmental function is less likely to be vested with meaningful freedom from governance by the State's elected officials.").  Chapters 15A and 73 do not designate WSC as a public corporation.  *See A.W. Chesterton*, 2 F.3d at 1206-07; Eichelroth Aff., ¶ 2.  WSC employees are employees of the Commonwealth.  Mass. Gen. Laws ch. 73, § 16.  While the college is authorized to enter into contracts in its own name, Mass. Gen. Laws ch. 15A, § 22, all contracts are subject to oversight by the sate auditor, Mass. Gen. Laws ch. 11, § 12, and the college does not have the power to pledge any security when forming a contract or to indemnify a contracting party.  *See* Mass. Const. art. 62, §1; *Lovering v. Beaudette*, 30 Mass. App. Ct. 665, 669-70 (1991) (finding Massasoit Community College had no authority to enter into indemnity agreement); Eichelroth Aff., ¶ 5.  The Commonwealth owns all of the real property and the buildings on the college's campus, with the exception of the residence halls.  Eichelroth Aff., ¶ 4.  And WSC's property is exempt from state taxation.  *See* Mass. Gen. Laws ch. 59, § 5; Eichelroth Aff., ¶ 4.

In addition, nothing in Chapters 15A or 73 suggests that the Commonwealth has disclaimed responsibility from financial liabilities incurred by WSC.  *See Fresenius*, 322 F.3d at 69.  In fact, the opposite is suggested by the fact that the Commonwealth must indemnify trustees

against liability arising out of their official duties performed in good faith and without malice. *See* Mass. Gen. Laws ch. 15A, § 22.[7] From the Court's review of applicable Massachusetts statutes and regulations, it appears that any monetary judgment plaintiff might achieve against WSC ultimately would be paid by the Commonwealth. *See* Mass. Gen. Laws ch. 15A, § 5 (defining WSC as a "public institution of higher learning"); 815 Code of Mass. Regs., § 5.02 (defining agency of Commonwealth to include "institutions of higher education"); 815 Code of Mass. Regs., §§ 5.09, 5.10 (describing process by which judgments against such agencies are processed by the Comptroller of the Commonwealth); *see also*, Eichelroth Aff., ¶ 16.

Finally, while it appears that the courts of Massachusetts have not directly addressed WSC's status as a state entity, the state courts have consistently treated the University of Massachusetts as an arm of the state. *See, e.g.*, *Wong v. University of Mass.*, 438 Mass. 29 (2002); *McNamara v. Honeyman*, 406 Mass. 43 (1989); *Hannigan v. New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 367 Mass. 658 (1975); *Opinion of the Justices to the Governor*, 363 Mass. 889 (1973); *Robinson v. Commonwealth*, 32 Mass. App. Ct. 6 (1992). The University of Massachusetts is a public institution of higher learning with a governing structure similar to that of WSC. *Compare* Mass. Gen. Laws ch. 15A *and* ch. 73 *with* ch. 75. Accordingly, the courts of Massachusetts would likely deem WSC to be an arm of the state if given the opportunity to do so.

After reviewing these relevant indicia, the Court concludes that Worcester State College is an arm of the Commonwealth, structured to share the Commonwealth's sovereignty. The

---

[7] As a prerequisite to indemnification, § 22 requires that the defense or settlement of any such claim be made by the Attorney General or her designee. Representation by the Attorney General is an additional indication that an entity is an arm of the state. *See A.W. Chesterton*, 2 F.3d at 1207 n.11.

statutory scheme reveals a legislative intent to cede a degree of administrative autonomy to the trustees without also relinquishing financial responsibility for the college.  Therefore, the first prong of the *Fresenius* standard is satisfied.  It is also clear, although the Court need not reach the issue, that there is a substantial probability that the Commonwealth would pay any damages in this matter from the public treasury.  Accordingly, plaintiff's claims in the amended complaint against Worcester State College are barred by reason of sovereign immunity and will be dismissed pursuant to Rule 12(b)(1).[8]

**IV.**     **Conclusion**

For the foregoing reasons, and pursuant to Fed. R. Civ. P. 12(b)(1), the motion of defendant Worcester State College to dismiss is GRANTED.  Counts 1, 6, and 7 of the amended complaint are hereby DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: October 29, 2007

---

[8]   The Court need not reach defendant's argument that WSC is not a "person" subject to suit under § 1983.